**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**WAYCROSS DIVISION**

JACOB IRA VIJANDRE,

Petitioner,

v.

WARDEN, FOLKSTON ICE PROCESSING CENTER,

Respondent.

CIVIL ACTION NO.: 5:25-cv-136

# ORDER AND REPORT AND RECOMMENDATION

Petitioner Jacob Vijandre ("Vijandre"), who is housed at the Folkston Immigration and Customs Enforcement ("ICE") Processing Center in Folkston, Georgia, filed a 28 U.S.C. § 2241 Amended Petition for Writ of Habeas Corpus through counsel. Doc. 21. Respondent filed a Motion to Dismiss, and Vijandre filed a Response. Docs. 28, 30. For the following reasons, I **RECOMMEND** the Court **GRANT in part** and **DENY in part** Respondent's Motion to Dismiss. Specifically, I **RECOMMEND** that the Court dismiss Counts I through V but deny Respondent's request to dismiss Counts VI and VII of Vijandre's Amended Petition. Should the District Judge adopt this Report and Recommendation, I **DIRECT** Respondent to respond to Counts VI and VII contained in Vijandre's Amended Petition within 14 days of the District Judge's ruling. I **GRANT** Vijandre's Motion to Expedite, to the extent I am issuing this Report and Recommendation. Doc. 36.

## BACKGROUND

### I. Vijandre's Personal Background and Immigration Proceedings

Vijandre is a native and citizen of the Philippines. Doc. 21 at 6; Doc. 21-2 at 2. Vijandre entered the United States in September 2001 with his family as an H-4 non-immigrant with authorization to remain in the United States until March 15, 2004. Doc. 21 at 7–8; Doc. 21-3 at 2. Vijandre was granted protection under Deferred Action for Childhood Arrivals ("DACA") in or around February 2013. Doc. 21 at 7–8. He requested regular extensions of his DACA protection during his time in the United States. Id. at 8. Vijandre most recently obtained DACA protection in May 2024, which purportedly expired in May 2026. Id.; Doc. 21-3 at 2. Vijandre has no criminal record. Doc. 21 at 6.

At an unspecified point in time, Vijandre became a "subject of interest" to the Dallas Joint Terrorism Task Force. Id. at 14; Doc. 21-2 at 3. The Federal Bureau of Investigation initiated a review of Vijandre's immigration record, which revealed that he had overstayed his non-immigrant visa and had been approved DACA status.[1] Doc. 21 at 14; Doc. 21-2 at 3. Deportation Officer ("DO") Felps, a member of the Task Force, advised United States Citizenship and Immigration Services ("USCIS") of "derogatory information" obtained from Vijandre's public social media and requested that his DACA status be terminated. Doc. 21-2 at 3. The United States Department of Homeland Security ("DHS") "Record of Deportable/Inadmissible Alien" attached to the Amended Petition states that USCIS served

---

[1] Vijandre includes numerous detailed factual statements in his Amended Petition about the speech and activity that he maintains formed the basis for some of DHS's decisions leading. Doc. 21 at 7–28. Vijandre contends that this speech was protected by the First Amendment. Given my recommended disposition of Vijandre's First Amendment claims, I decline to include the details of Vijandre's allegations here.

Vijandre with a Notice of Intent to Terminate ("NOIT") his DACA status at his Arlington, Texas address on September 22, 2025. Id. This service was by mail.[2] Doc. 21-3 at 3–4.

On October 7, 2025, ICE agents arrested Vijandre as he was leaving his Arlington, Texas home, and he was taken into custody that day. Doc. 21 at 15. That same day, DHS issued a Notice to Appear charging Vijandre with being removable under 8 U.S.C. § 1227(a)(1)(B).[3] Id. at 16; see also id. at 15.[4] Vijandre was transferred to the Folkston ICE Processing Center on October 24, 2025. Id.

On October 24, 2025, DHS submitted to the immigration court a declaration, dated October 17, 2025, from DO Felps that listed additional reasons for Vijandre's detention beyond those contained in the NOIT. Doc. 21 at 16; Doc. 21-3. DO Felps describes several social media posts on accounts linked to Vijandre, which DO Felps connects to various terrorist groups and ideologies. Doc. 21-3 at 2–4.

On November 3, 2025, the immigration judge conducted a hearing "to determine whether the immigration court had jurisdiction to make a custody redetermination regarding Vijandre's current detention." Doc. 21 at 18–19. DHS counsel argued that the court lacked jurisdiction to conduct a bond hearing because Vijandre qualified as a terrorist or supporting terrorists. Id. at 19. DHS counsel argued Vijandre was subject to mandatory detention because the NOIT avers

---

2 In his Response to the Motion to Dismiss, Vijandre claims he did not "have access to the NOIT" until after his October 7, 2025 arrest. Doc. 30 at 16. Although the NOIT is dated September 22, 2025, Vijandre states that he was unaware "his immigration status was in question" at the time of his arrest. Id. Vijandre welcomes an evidentiary hearing on this issue. Id.

3 Section 1227(a)(1)(B) of Title 8 of the United States Code states that an alien "who is present in the United States in violation of this chapter or any other law of the United States[] . . . is deportable."

4 Vijandre's Amended Petition contains the notation "[sic]" following the September 22, 2025 date in a block quote, and I include it here for the sake of consistency. Doc. 21 at 15. I recognize Vijandre states that he did not receive notice of the NOIT on September 22, 2025.

that he was providing material support to or soliciting funds for terrorist organizations and Vijandre's social media posts show he endorses or espouses terrorist activity. Id. Vijandre's immigration counsel had no notice that DHS would be making these arguments. Id.

The immigration judge took testimony from Vijandre and focused her colloquy on Vijandre's social media activity and attendance at various religious and political public events. Id. An excerpt of the colloquy between Vijandre and the immigration judge is reproduced in the Amended Petition. Id. at 19–26. The colloquy covered Vijandre's social media posts, including those concerning the HLF5, the Fort Dix Five, and Aafia Siddiqui, his posts discussed in the Felps Declaration, his coverage of the Aafia Siddiqui documentary screening, and his beliefs about Palestinians and the events in Gaza. Id. Relevantly, Vijandre had difficulty recalling specific information about the Fort Dix Five but stated he believed that he saw "something about a group of individuals and the non-profit organization raising awareness about them" on social media. Id. at 24–25.

At the conclusion of the hearing, the immigration judge determined that she lacked jurisdiction to conduct a bond hearing based on 8 U.S.C. § 1182(a)(3)(B)(i)(VII), the "endorse or espouse" terrorism provision. Id. at 26–27. To support her conclusion, the immigration judge referenced the NOIT, the Felps Declaration, and Vijandre's testimony. Id. The immigration judge did not conduct a bond hearing or ask questions regarding whether Vijandre posed a danger to the community or posed a flight risk. Id. at 27. However, she concluded as an "alternate finding" that Vijandre was a danger to the community and flight risk based on his social media activity. Id. at 27–28. Vijandre appealed the immigration judge's decision regarding bond. Doc. 35.

Vijandre submitted a supplemental exhibit after Respondent filed his Motion to Dismiss, which contains DHS's pre-hearing brief for the removal proceedings. Doc. 31. The pre-hearing brief states that Vijandre "publicly solicited donations to support legal defense funds for the Ft. Dix Five and the Somali Three." Doc. 31-1 at 8, 9. DHS cites to a "Tab F," purportedly containing the social media post(s) at issue, to support this proposition, but Tab F is not included with the filing. See generally Doc. 31.

## II. Instant § 2241 Habeas Proceedings

Vijandre is detained based on 8 U.S.C. § 1226(c)(1)(D) and on an alternative finding that he is a danger to the community and flight risk. Doc. 35. In his Amended Petition, Vijandre asserts claims based on the First and Fifth Amendments. Doc. 21 at 28–44. In Count I, he claims that the bases for his detention under § 1226(c)(1)(D)—the NOIT, the Felps Declaration, and the immigration judge's November 3, 2025 ruling—violate his free speech rights. Doc. 21 at 28–32. In Count II, Vijandre alleges 8 U.S.C. § 1182(a)(3)(B)(i)(VII), the "endorse or espouse provision," is unconstitutional as applied to him. Id. at 32–34. In Count III, Vijandre claims his detention under § 1226(c)(1)(D) is a prior restraint aimed at preventing him from publishing his views on social media. Id. at 34–36. And in Counts IV and V, Vijandre alleges § 1182(a)(3)(B)(i)(VII) is facially vague and overbroad. Id. at 36–40. In Count VI, Vijandre claims his detention violates substantive due process under the Fifth Amendment because his confinement is unrelated to a valid government purpose. Id. at 40–41. Finally, in Count VII, Vijandre brings a procedural due process claim under the Fifth Amendment, alleging a violation because the burden of proof in the custody redetermination proceedings was improperly applied to him rather than to the Government. Id. at 41–44. Vijandre seeks his immediate release or, in the alternative, a bond hearing at which the Government bears the burden of proof. Id. at 44–45.

Respondent moves to dismiss the Amended Petition, arguing: (1) the Amended Petition is a shotgun pleading; (2) Vijandre has not exhausted his administrative remedies; (3) 8 U.S.C. § 1252(g) bars Vijandre's claims; and (4) Vijandre's detention is lawful because he is subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(D) and his First Amendment claims lack merit. Doc. 28 at 4–14.

**DISCUSSION**

**I. Vijandre's Pleading Is Sufficient**

Respondent argues that the Amended Petition is a shotgun pleading that violates Rules 8(a)(2) and 10(b) of the Federal Rules of Civil Procedure. Doc. 28 at 3–4. Respondent complains that Vijandre raises seven claims for relief, each of which incorporates all preceding paragraphs within it. Id. at 4 (citing Doc. 21 ¶¶ 64, 71, 78, 90, 97, 101). Vijandre responds that the Amended Petition is not a shotgun pleading, and even if it were, dismissal would not be warranted. Doc. 30 at 10–11.

Courts consider a complaint to be a shotgun pleading when it "contain[s] multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1323 (11th Cir. 2015). This practice is typically banned when there are not additional allegations under each count that "give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1294–95 (11th Cir. 2018) (quoting Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1323 (11th Cir. 2015)).

Here, although Vijandre does adopt and incorporate all preceding paragraphs in each count, I decline to strike the Amended Petition or order any amendment. The Amended Petition

is sufficiently comprehensible, as Vijandre separates his theories of relief into separately numbered counts and identifies the law and relevant facts supporting each count. Respondent ably responded to the Amended Petition and articulated various bases for why, in his view, the Amended Petition should be dismissed. The Amended Petition did not "fail . . . to give the [Respondent] adequate notice of the claims" and, thus, is not a shotgun pleading of the kind warranting correction. Weiland, 792 F.3d at 1323. Thus, I find that the Amended Petition is not a shotgun pleading, and I decline to recommend dismissal on that basis.

## II. Jurisdictional Challenges

The Court has the authority to grant a writ of habeas corpus to a petitioner who demonstrates that he is being held in custody in violation of federal law. 28 U.S.C. § 2241(a), (c)(3); see INS v. St. Cyr, 533 U.S. 289, 301 (2001) ("[T]he writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."); Zadvydas v. Davis, 533 U.S. 678, 687 (2001) (noting that § 2241 habeas corpus proceedings are available to challenge the lawfulness of immigration-related detention).

Respondent contests the Court's jurisdiction, arguing that the "plain language of 8 U.S.C. § 1252(g) and the Eleventh Circuit's consistent interpretation of this provision independently foreclose Petitioner's habeas corpus claims." Doc. 28 at 7. In a footnote, Respondent further points out that "[h]ad the Amended Petition disputed the grounds on which the [immigration judge] reached her alternative conclusions that Petitioner had failed to show he was [not] a flight risk or danger, such a challenge would be barred under 8 U.S.C. § 1226(e)." Id. at 10 n.2. Although Respondent does not directly argue this, Respondent's reference to the immigration judge's alternative finding exposes a different jurisdictional problem: standing. As explained

below, Vijandre lacks standing to bring Counts I through V, his First Amendment claims, because he fails to show that the relief sought—his release or, in the alternative, an individualized bond hearing—will redress his injuries.[5] As to his Fifth Amendment claims in Counts VI and VII, I conclude that the Court has jurisdiction to review these claims.

### A. Vijandre's First Amendment Claims Are Non-Justiciable for Lack of Standing

As an initial matter, "every court has an independent duty to review standing as a basis for jurisdiction at any time, for every case it adjudicates." Fla. Ass'n of Med. Equip. Dealers v. Apfel, 194 F.3d 1227, 1230 (11th Cir. 1999) (citing FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231 (1990)). This is so even when neither party raises this issue. See Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 434 (2011) (noting "federal courts . . . must raise and decide jurisdictional questions that the parties either overlook or elect not to press").

"Article III of the United States Constitution restricts the power of federal courts to adjudicating actual 'cases' and 'controversies.'" Wooden v. Bd. of Regents of Univ. Sys. of Ga., 247 F.3d 1262, 1273 (11th Cir. 2001) (citing U.S. Const. art. III, § 2, cl. 1); see also John Roe, Inc. v. United States, 142 F.3d 1416, 1420–21 (11th Cir. 1998) (stating it is well settled that the exercise of federal subject matter jurisdiction depends on the existence of a "case or controversy," and the federal courts have no authority to give opinions on moot questions or abstract propositions) (citing Church of Scientology v. United States, 506 U.S. 9, 12 (1992); and then citing North Carolina v. Rice, 404 U.S. 244, 246 (1971)). "Perhaps the most important of

---

[5] Vijandre also seeks injunctive relief enjoining Respondent from unlawfully detaining him, as well as various forms of declaratory relief related to his constitutional claims. Doc. 21 at 44–45. This relief is ultimately ancillary to his request for release and, alternatively, for a bond hearing; thus, the Court need not address this further.

the Article III doctrines grounded in the case-or-controversy requirement is that of standing." Wooden, 247 F.3d at 1273 (citing Allen v. Wright, 468 U.S. 737, 750 (1984)).

Standing under Article III contains three elements: (i) "injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant[,]" or "traceability"; and (iii) "injury would likely be redressed by judicial relief." TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992). The petitioner must present "specific, concrete facts" showing that the challenged conduct will result in a "demonstrable, particularized injury" to the petitioner so that the petitioner personally will benefit in a "tangible way" from court action. Warth v. Seldin, 422 U.S. 490, 508 (1975); Thompson Bldg. Wrecking Co., Inc. v. Augusta, CV 109-115, 2010 WL 11613685, at *2–3 (S.D. Ga. July 26, 2010). A petitioner "bears the burden of establishing standing as of the time he brought this lawsuit and maintaining it thereafter." Carney v. Adams, 592 U.S. 53, 57 (2020). "Put very broadly, for purposes of a standing analysis, a court will generally accept the allegations that a defendant's actions were wrong and then ask whether a particular plaintiff's rights were violated by them." MacPhee v. MiMedx Grp., Inc., 73 F.4th 1220, 1240 (11th Cir. 2023).

Here, there is no dispute that Vijandre satisfies the injury and traceability elements of standing. He is currently detained, which is a concrete and actual injury. His current detention is direct attributable to Respondent, who has custody over him. However, in light of the immigration judge's alternative finding, Vijandre fails to show that his injury will be redressed by a finding in his favor as to his First Amendment challenges to mandatory detention under 8 U.S.C. § 1226(c)(1)(D) (i.e., Counts I–V of his Amended Petition).

In assessing redressability, a court must ask whether a decision in a movant's favor would "significant[ly] increase . . . the likelihood" that he "would obtain relief that directly redresses the injury" that he claims to have suffered. Harrell v. Fla. Bar, 608 F.3d 1241, 1260 n.7 (11th Cir. 2010) (citation omitted). "[I]t must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Lujan, 504 U.S. at 561 (quoting Simon v. E. Ky. Welfare Rts. Org., 426 U.S. 26, 38 (1976)); see also Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, 508 U.S. 656, 663–64 (1993) (explaining redressability means "the 'prospect of obtaining relief from the injury as a result of a favorable ruling' is not 'too speculative'" (quoting Allen v. Wright, 468 U.S. 737, 752 (1984))). Critically, redressability helps "provid[e] a safeguard against advisory opinions." Brito v. Garland, 22 F.4th 240, 253 (1st Cir. 2021).

Here, the immigration judge's alternative finding that Vijandre's social media posts demonstrated he was a flight risk and danger to the community and, thus, not entitled to bond, establishes there is no possibility that Vijandre can obtain the relief sought for his First Amendment claims. Even if I found in Vijandre's favor—i.e., found that the justifications for his mandatory detention under 8 U.S.C. § 1226(c)(1)(D) violate the First Amendment, that § 1182(a)(3)(B)(i)(VII) is unconstitutional as applied, or that § 1182(a)(3)(B)(i)(VII) is facially overbroad—Vijandre would still not entitled to release from custody because the immigration judge also determined that he is a flight risk and danger to the community. Significantly, this alternative conclusion serves as an independent basis for Vijandre's detention. Thus, finding in Vijandre's favor on his First Amendment challenges to mandatory detention under § 1226(c)(1)(D) in Counts I through V of his Amended Petition would make no practical difference because the immigration judge's alternative conclusion would require Vijandre to

remain detained. Likewise, Vijandre's alternative request for a bond hearing would not result in any relief because the immigration judge already found that Vijandre should be detained based on a risk of flight and his dangerousness.

The Court has thoroughly reviewed the relevant filings to determine whether Vijandre challenges the immigration judge's alternative finding for his detention in Counts I through V, and he does not. Doc. 21 at 28–40. In the Motion to Dismiss, Respondent expressly mentions the immigration judge's alternative basis for detention twice: once in the background section and the second time in footnote 2. In this footnote, Respondent states: "Had the Amended Petition disputed the grounds on which the [immigration judge] reached her alternative conclusions . . ., such a challenge would be barred under 8 U.S.C. § 1226(e)." Doc. 28 at 10 n.2. Vijandre makes no mention of the alternative basis for the immigration judge's conclusions regarding his detention in his Response to the Motion to Dismiss. Doc. 30. Thus, it is clear that Vijandre does not seek to challenge the immigration judge's alternative basis for detention in Counts I through V of his Amended Petition.

Vijandre's Fifth Amendment claims, however, are different. In Count VI, Vijandre challenges his detention as being a substantive due process challenge, alleging his detention is unrelated to flight or danger. Doc. 21 at 40–41. Vijandre does not specify whether he challenges his mandatory detention under § 1226(c), the immigration judge's alternative finding, or both. Construing the pleadings in the light most favorable to Vijandre, Count VI challenges both. Because Count VI challenges both bases for his detention, if I were to find in Vijandre's favor, he could obtain the relief sought.

In Count VII, Vijandre argues that placing the burden of proof on him in custody redetermination proceedings, rather than on the government, violates procedural due process

under the Fifth Amendment. Id. at 41–43. Vijandre also argues that his rights were violated because he did not receive notice that he was subject to mandatory detention before the hearing. Id. at 43-44. Thus, Vijandre again challenges his § 1226(c) detention and the alternative finding. Count VII is therefore redressable by the relief sought.

In sum, even if I were to find in Vijandre's favor on his First Amendment challenges to mandatory detention, he could not receive the relief he seeks due to the immigration judge's alternative finding. Therefore, it is not likely, and indeed, impossible at this stage in the proceedings, to redress Vijandre's injuries with the relief sought in Counts I through V. The Court lacks jurisdiction to consider Counts I through V, and the Court should grant Respondent's Motion to Dismiss as to these counts. See Trega v. Bondi, 821 F. Supp. 3d 84, 92 (D. Me. 2026) (concluding "granting a writ of habeas corpus would not redress any alleged injury stemming from [petitioner's] arrest" where illegal arrest had no bearing on legality of detention pending removal proceedings).

I address Respondent's remaining arguments for dismissal as to Counts VI and VII of Vijandre's Amended Petition.

### B. The Court Has Jurisdiction to Adjudicate Vijandre's Fifth Amendment Claims Under § 1252(g)

Vijandre argues that his habeas claims are not challenges to the Attorney General's decision to commence removal proceedings, adjudicate his case, or execute a removal order and, therefore, § 1252(g) does not deprive the Court of jurisdiction. Doc. 30 at 5–7.

Section 1252(g) states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). The United States Supreme Court has given § 1252(g) a "narrow

reading," emphasizing that it does not cover "all claims arising from deportation proceedings" or impose "a general jurisdictional limitation." Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 482, 487 (1999); see also Dep't of Homeland Sec. v. Regents of the Univ. of Cal., 591 U.S. 1, 19 (2020) (characterizing § 1252(g) as narrow). Rather, as "the Supreme Court has explained, § 1252(g) lists just three 'discrete actions': actions to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" Camarena v. Dir., Immigr. & Customs Enf't, 988 F.3d 1268, 1272 (11th Cir. 2021) (quoting Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 482 (1999)). "[A]lthough 'many other decisions or actions' may be 'part of the deportation process,' only claims that arise from one of the covered actions are excluded from [a court's] review (at least by this provision)." Id. (quoting Reno, 525 U.S. at 482).

The Supreme Court has likewise interpreted § 1252(g)'s "arise from" language narrowly, cautioning that § 1252(g) does not "sweep in any claim that can technically be said to 'arise from' the three listed actions." Jennings v. Rodriguez, 583 U.S. 281, 294 (2018). Instead, the statute "refer[s] to just those three specific actions themselves." Id. In other words, to determine whether a claim "arise[s] from" one of the covered actions, "courts must focus on the action being challenged," Canal A Media Holding, LLC v. U.S. Citizenship & Immigr. Servs., 964 F.3d 1250, 1258 (11th Cir. 2020), namely, whether one of the three actions listed § 1252(g) forms the "basis of the claim[.]" Gupta v. McGahey, 709 F.3d 1062, 1065 (11th Cir. 2013), suggestion for reh'g en banc denied, 737 F.3d 694 (11th Cir. 2013), cert. denied, 573 U.S. 931 (2014).

Consequently, an alien who seeks a stay of a removal order or challenges the Attorney General's deportation authority "runs headlong into § 1252(g)," regardless of how the alien frames his claim, but jurisdiction is appropriate over a claim that challenges the legal bases of a detention decision. Camarena, 988 F.3d at 1273. The Eleventh Circuit, as well as other Circuits,

have distinguished between situations where an alien's claims are founded directly on a decision or action to commence proceedings, adjudicate cases, or execute removal orders from those where an alien challenges the "underlying legal bases" of those decisions or actions. See Madu v. U.S. Att'y Gen., 470 F.3d 1362, 1368 (11th Cir. 2006) (citations omitted); accord Kong v. United States, 62 F.4th 608, 613 (1st Cir. 2023) (finding that § 1252(g) does not bar "judicial consideration of collateral challenges to the legality of a petitioner's detention"); United States v. Hovsepian, 359 F.3d 1144, 1155 (9th Cir. 2004) (finding that § 1252(g) does not bar consideration of "a purely legal question that does not challenge the Attorney General's discretionary authority, even if the answer to that legal question—a description of the relevant law—forms the backdrop against which the Attorney General later will exercise discretionary authority"); Parra v. Perryman, 172 F.3d 954, 957 (7th Cir. 1999) (finding that § 1252(g) did not bar review of a claim related to detention where the petitioner "did not ask the district court to block a decision 'to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter'").

Respondent contends that Vijandre is challenging his detention "during removal proceedings," and, thus, argues that Vijandre is effectively challenging the removal itself because the detention arose from the removal proceedings. Doc. 28 at 9. Respondent's argument is unconvincing. Vijandre does not challenge the decision to commence proceedings against him, adjudicate his case, or execute his removal. Rather, the "basis of Vijandre's claim" is an attack on the underlying legal basis of his detention based on alleged Fifth Amendment violations. Moreover, Respondent does not argue that Vijandre is subject to a final order of

removal yet.[6] Thus, Respondent's jurisdiction argument fails. See Djadju v. Vega, 32 F.4th 1102, 1105–06 (11th Cir. 2022) ("Although our jurisdiction to consider challenges under § 2241 to an alien's detention is limited, we have jurisdiction to address a challenge to the legal basis of the detention, including constitutional challenges." (citing Madu v. U.S. Att'y Gen., 470 F.3d 1362, 1368) (11th Cir. 2006)); Chavez v. Dir. of Detroit Field Off., No. 4:25-CV-02061, 2025 WL 2959617, at *3 (N.D. Ohio Oct. 20, 2025) ("[T]he district court may review whether an alien is lawfully detained; the Attorney General's immigration authority does not abrogate § 2241's authority to grant the writ within these bounds.); cf. Jose J.O.E. v. Bondi, No. 25-CV-3051, 2025 WL 2466670, at *7 (D. Minn. Aug. 27, 2025) (citing Jennings v. Rodriguez, 583 U.S. 281, 294–95 (2018) ("For present purposes, it is enough to note that respondents are not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal; and they are not even challenging any part of the process by which their removability will be determined. Under these circumstances, § 1252(b)(9) does not present a jurisdictional bar.")). In sum, the Court has jurisdiction to adjudicate Vijandre's challenge to the legality of his detention. See Zadvydas, 533 U.S. at 687.

## III. Vijandre's Failure to Exhaust Does Not Warrant Dismissal at This Time Because He Raises Constitutional Claims Beyond the Agency's Power to Address

Respondent argues that the Amended Petition should be dismissed because Vijandre failed to exhaust his administrative remedies. Doc. 28 at 4–7. Respondent contends that Vijandre filed his Petition prematurely, before any custody redetermination hearing had taken place. Id. at 6. While that hearing has now occurred, Respondent notes that exhaustion is

---

[6] According to publicly available records, the immigration judge entered a removal order on March 6, 2026. See https://acis.eoir.justice.gov/en/, search using Vijandre's A-number and nationality (last accessed Aug. 31, 2026). However, an appeal of the removal order was filed on April 4, 2026, which remains pending. The parties recently completed briefing. Id.

determined at the time the Petition is filed. Id. Further, Respondent argues that, even now and despite that hearing, administrative remedies remain unexhausted because Vijandre can appeal the immigration judge's bond determination to the Board of Immigration Appeals ("BIA") and has reserved such a right. Id. at 7.

Respondent acknowledges, correctly, that exhaustion is not jurisdictional. See Santiago-Lugo v. Warden, 785 F.3d 467, 474 (11th Cir. 2015); see also Fleming v. Warden of FCI Tallahassee, 631 F. App'x 840, 842 (11th Cir. 2015) ("[Section] 2241's exhaustion requirement was judicially imposed, not congressionally mandated, and . . . nothing in the statute itself support[s] the conclusion that the requirement [is] jurisdictional."). Nevertheless, the Eleventh Circuit Court of Appeals has noted "that the exhaustion requirement [is] still a requirement and that courts cannot 'disregard a failure to exhaust . . . if the respondent properly asserts the defense.'" Fleming, 631 F. App'x at 842 (citing Santiago-Lugo v. Warden, 785 F.3d 467, 475 (11th Cir. 2015)).

Vijandre counters that exhaustion is excused or satisfied. Doc. 30 at 7–10. Vijandre argues that a habeas petitioner does not need to exhaust administrative remedies where delay results in irreparable harm or the agency where exhaustion is to be had does not have the ability to adjudicate the claims or grant relief. Id. at 8. Vijandre argues that he faces irreparable harm because the basis of his claim is that his ongoing detention is based on an unconstitutional statute subjecting him to mandatory detention. Id. at 9–10. Vijandre further argues that the immigration judge and BIA do not have the ability to adjudicate his constitutional claims. Id. at 9.

Exhaustion is not required in this matter because the immigration judge and BIA cannot consider Vijandre's constitutional claims. The Eleventh Circuit has "suggested that 'some classes of claims' arising under the immigration laws and alleging constitutional error are not

subject to a requirement of administrative exhaustion, while others are." Bing Quan Lin v. U.S. Att'y Gen., 881 F.3d 860, 867 (11th Cir. 2018), overruled on other grounds by Santos-Zacaria v. Garland, 598 U.S. 411, 419–23 & n.2 (2023). "[T]hose constitutional claims raised for the first time in [federal court] that address issues beyond the power of the BIA to address in adjudicating an individual's case may not require exhaustion." Bing Quan Lin, 881 F.3d at 868 (citation omitted). The Eleventh Circuit has determined that, for example, constitutional due process claims based on alleged issues with notice, records, and reopening decisions in immigration proceedings are of the kind within the power of the BIA to consider. Id. "None of these claims raises a larger challenge to the immigration process beyond the power of the BIA to address." Id.

Here, Vijandre challenges his detention by alleging substantive and procedural due process violations under the Fifth Amendment. Doc. 21. In particular, in Count VI, Vijandre claims his detention is a violates substantive due process because it is unrelated to flight or dangerousness. Doc. 21 at 40–41. In Count VII, he claims the immigration judge wrongly placed the burden of proof in the custody redetermination hearing on him, in contravention of Fifth Amendment procedural due process, and he never received notice that the Government would be seeking his mandatory detention. Id. at 40–44.

Vijandre does not need to exhaust his Fifth Amendment claims because he challenges the immigration process itself, which is beyond the power of the BIA to address. In other words, he did not need to exhaust these claims at the agency level because they do not "involve[] procedural errors correctable by the administrative tribunal." Mojsilovic v. INS, 156 F.3d 743, 748 (7th Cir. 1998) (citing Castaneda-Suarez v. INS, 993 F.2d 142, 144 (7th Cir. 1993)); see also Mendez-Gutierrez v. U.S. Att'y Gen., 860 F. App'x 155, 158 n.1 (11th Cir. 2021) (noting the

court will consider petitioner's substantive due process claim "since [it is] outside of the BIA's power to address and do[es] not challenge the BIA's own procedure"); Lopez v. Paulk, No. 7:26-CV-0029, 2026 WL 961948, at *4 (M.D. Ga. Apr. 6, 2026) (noting "other district courts have similarly excused administrative exhaustion where a petitioner raises a due process challenge" to the custody redetermination process under § 1226).

"Exhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." McCarthy v. Madigan, 503 U.S. 140, 145 (1992), superseded by statute on other grounds, as stated in Woodford v. Ngo, 548 U.S. 81 (2006). Because the agency cannot consider Vijandre's Fifth Amendment claims, there is no administrative authority to protect, and judicial efficiency will not be promoted. Thus, I find that exhaustion is not an appropriate ground for dismissal.

## IV. This Case Shall Proceed to Briefing on the Merits of Vijandre's Counts VI and VII

As set forth above, Vijandre's First Amendment challenges to mandatory detention should be dismissed because the Court cannot provide him the relief he seeks. However, Respondent's arguments for dismissal of his Fifth Amendment claims are unavailing. The Court has jurisdiction to consider them, and Vijandre did not need to exhaust his administrative remedies as to these claims. Respondent did not provide any other arguments for dismissal of Vijandre's Fifth Amendment claims in his Motion to Dismiss. Accordingly, this matter should proceed to full briefing on the merits of the remaining claims.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **GRANT in part** and **DENY in part** Respondent's Motion to Dismiss. Doc. 28. I **RECOMMEND** that the Court **GRANT** Respondent's Motion to Dismiss on Vijandre's First Amendment claims but **DENY**

Respondent's Motion to Dismiss on Vijandre's Fifth Amendment claims. Should the District Judge adopt this Report and Recommendation, I **DIRECT** Respondent to respond to Counts VI and VII contained in Vijandre's Amended Petition within 14 days of the District Judge's ruling. I **GRANT** Vijandre's Emergency Motion to Expedite, to the extent I am issuing this Report and Recommendation. Doc. 36.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made herein. Objections not meeting the specificity requirement set out above will not be considered by the District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by

or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 31st day of August, 2026.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA